# Girard Trust Company, Appellant, v. Summit Branch Coal Company.

*Corporations—Mortgage—Scrip certificates—Estoppel.*

Where scrip certificates are not secured by a corporation mortgage, but the holders thereof are entitled to have them converted into bonds, which will be secured by the mortgage, and such holders, who are also holders of bonds, intervene in foreclosure proceedings and permit a decree to be entered and a sale to be made, without demanding a bond in exchange for their scrip, or asserting in any way their right to the security of the mortgage, except in respect of the bonds held by them, they will not be permitted to participate in the fund for distribution as if their scrip had been converted into bonds under the equitable rule that equity regards that as done which ought to have been done. In such a case the nonaction of the scrip holders may have influenced the other bondholders in their bidding or not bidding at the sale.

Argued Oct. 14, 1902. Appeal, No. 43, Oct. T., 1902, by plaintiff, from decree of C. P. No. 2, Phila. Co., Sept. T., 1899, No. 666, on bill in equity in case of Girard Trust Company v. Summit Branch Coal Company et al. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Bill in equity to foreclose a corporate mortgage. Before PENNYPACKER, P. J.

The facts are stated in the opinion of the Superior Court.

The court entered the following decree:

And now, to wit: February 14, 1902, the petition of the Girard Trust Company and the petition of Emma C. Rommel, Lewis A. Rommel, John Rommel and Jacob M. Rommel, executors of the estate of John Rommel, Jr., deceased, having been duly considered, it is ordered and decreed that the decree of distribution heretofore made in the above case be amended, and that the sum of $458.20 remaining in the hands of the Girard Trust Company, as trustee, be paid by it to Emma C. Rommel, Lewis A. Rommel, John Rommel and Jacob M. Rommel, executors as aforesaid, upon the surrender by them to it of scrip certificates of the Summit Branch Coal Company, amounting in the aggregate to $1,150.

*Error assigned* was the decree of the court.

*John G. Johnson*, with him *George Tucker Bispham*, for appellant.—The separate owners of scrip, aggregating $1,150, had no right to claim delivery to them of a bond.

Though two separate owners might demand a bond of $1,000, under a demand made at a proper time, they had no right to receive the same after a decree of foreclosure fixing the total amount of the indebtedness secured by the mortgage.

The holder of scrip certificates who has not attempted to secure their conversion, in the manner prescribed by their terms, into bonds secured by a mortgage until after the entry of a decree of foreclosure of the mortgage fixing the amount of indebtedness secured thereby and ordering a sale, and after a sale made thereon, cannot participate with respect to such certificates in the proceeds of such sale.

*J. Martin Rommel*, for appellee.

OPINION BY RICE, P. J., April 20, 1903:

The defendant corporation, shortly after its organization, executed a mortgage in the sum of $1,400,000 to the plaintiff as trustee to secure the payment of such coupon bonds of $1,000 each, not to exceed 1,400 in number, as were issued, or might thereafter be issued, by the defendant company, and certified by the trustee.    There were issued by the defendant only 1,230 of said bonds, and at the time of the decree of foreclosure about to be referred to, 1,206 of these were held by the Pennsylvania Railroad Company, one was held by Emmeline C. Maddock, two were held by Emma C. Rommel in her own right, and twenty-one were held by Emma C. Rommel and others, executors of the estate of John Rommel, Jr., deceased.    In November, 1899, the trustee named in the mortgage filed a bill in equity alleging default in payment of interest on the bonds and praying for a decree directing the sale of the property and franchises covered by the mortgage in order to pay the bonds secured thereby.    While this bill was pending the executors of John Rommel, Jr., deceased, presented to the court a petition setting forth the fact of their holding the twenty-one bonds above referred to, but alleging no other interest or claim to be

affected by the proceeding, and praying, " in order that their interest " (evidently referring to their interest as bondholders) " may be properly protected that they may have leave to intervene and be made a party defendant to the aforesaid bill." Their petition was granted. Subsequently the cause, having been put at issue, was referred to a referee, and he having reported that the prayer of the bill should be granted, and no exceptions to his report having been filed, the court entered a formal decree reciting the giving of the mortgage, the issuing of the 1,230 bonds above referred to, the default in the payment of interest thereon, the demand on the plaintiff as trustee to proceed to sell the mortgaged premises for the benefit of the holders of the bonds secured thereby, and decreeing that, in default of the payment of $1,360,240.61, the amount of the principal of the outstanding bonds and the interest thereon then due, within thirty days, the premises should be sold, and—we now quote the language of the decree—"that the moneys arising from said sale shall be brought into court for distribution; that the said moneys after deductions for the expenses of the trust and for indemnity to the plaintiff as trustee, shall be appropriated, first to the payment of all interest due on said outstanding bonds secured by said mortgage; and secondly, to the payment of the principal of said outstanding bonds in full, if such purchase money shall be sufficient, and if not, then pro rata, so that no preference, priority or distinction shall be given to any of said bonds." The defendant company failed to pay the principal and interest within the time fixed in the decree, and in due course the property covered by the mortgage was sold to an outside party for the sum of $700,000. The court confirmed the sale, and directed the trustee to retain a sufficient sum to await the result of another suit instituted by the executors of John Rommel, Jr., to which we shall presently refer, and to appropriate the residue of the fund as directed by the foreclosure decree.

The question we are called to pass upon relates to the disposition of the portion of the fund thus retained. It arises in this way: It appears that at the date of the filing of the bill in equity, Emma C. Rommel held, in addition to the bond issued to her, a scrip certificate issued by the defendant company in the following form: " Scrip for Fractions of Bonds. Summit

Branch Coal Company. May 2d, 1899. Whereas in the exchange and conversion of certain bonds of the Summit Branch Railroad Company into certain bonds of the Summit Branch Coal Company by Emma C. Rommel there remains a fractional excess of three hundred dollars ($300) which is less than the equivalent of the par value of a bond of the latter company, therefore this certifies that Emma C. Rommel or bearer is entitled on demand made to the Summit Branch Coal Company to receive a bond or bonds of the Summit Branch Coal Company in exchange for an equal amount of the scrip when presented in even amounts of one thousand dollars or greater multiples thereof. This certificate does not bear interest and does not entitle the holder to any interest thereon." The executors of the estate of John Rommel, Jr., were the holders of a similiar certificate bearing the same date, for $850.

Between the date of the sale pursuant to the foreclosure decree and the date of the confirmation thereof, these parties, evidently acting conjointly, presented the said certificates, aggregating $1,150, to the defendant company, and demanded in exchange for them a bond for $1,000, which request was refused. Thereupon the executors went into another court and filed a bill to compel delivery to them of a bond in exchange for the certificates and obtained a decree "that the said defendant deliver to the plaintiffs one bond for $1,000, being one of a series of 1,400 bonds of like amount, secured upon all and singular the railroads, estates, real and personal, corporate rights and franchises and premises of the said defendant." This decree was reversed on appeal for two reasons, "first, because the specific act sought to be compelled is not within the power of the defendant company on the facts set up in the answer; and, second, because the plaintiffs were litigants in the forum which determined the amount secured by the mortgage in foreclosure, and by that forum their right to participation in the proceeds of the sale should be determined." See Rommel v. Summit Branch Coal Co., 18 Pa. Superior Ct. 482. After the dismissal of the bill in that suit, and after the confirmation of the sale of the mortgaged property pursuant to the foreclosure decree, Emma C. Rommel assigned her scrip certificate to the estate of John Rommel, Jr., and thereupon the executors presented a petition praying for a decree that the sum of $458.20, retained out of

the proceeds of the sale by the plaintiff, pending the litigation last referred to, be paid to them upon the surrender of the aforesaid scrip certificates. Their claim was, as stated in their petition, that they were "entitled to share in the proceeds realized from said sale with the same effect as if said scrip had been exchanged for one bond, the petitioners waiving the excess of said scrip over $1,000." The court took the same view of the matter, and made a decree accordingly; hence this appeal.

It will be observed that the scrip certificates, as such, were not secured by the mortgage. But the holders thereof were entitled to have them converted into bonds, which would be secured by the mortgage, "when presented in even amounts of $1,000 or greater multiples thereof." As they were thus convertible when presented by the person to whom they were issued "or bearer," we are not prepared to say that two separate holders of scrip, each for less than $1,000 but aggregating more than that sum, might not have joined in a demand for conversion of the same into a bond of $1,000, provided they were willing to waive the excess. At any rate, it seems clear that an assignment by one to the other of his scrip would entitle the latter to demand a bond secured by the mortgage, even though the scrip thus tendered for surrender and conversion exceeded $1,000, provided such tender and demand were made at a proper time. Equity regards that as done which ought to have been done, and in such a case as we have last supposed, the refusal to issue a bond would not bar the holder of the scrip from participating in the distribution of the proceeds of a foreclosure sale. But here, as was pointed out in Judge PORTER's opinion filed in the former case, the scrip holders knew of the foreclosure proceedings under the mortgage, became parties thereto upon their own petition, submitted to a decree determining the amount and character of the indebtedness secured by the mortgage and how and amongst whom the fund to be created by the sale should be distributed and permitted the sale to be made, all without raising any objection to the form or substance of the decree, and without demanding a bond in exchange for their scrip or asserting in any way their right to the security of the mortgage except in respect of the bonds held by them. It is not intimated that this apparent acquiescence in the proceedings was induced by

any fraud or mistake. So far as appears their omission, until after the sale, to demand a conversion of their scrip into a bond and to assert any claim as scrip holders to participate in the distribution of the fund to be created by the sale was the exercise of their deliberate judgment formed with full knowledge of all the facts. How far this action and nonaction, on their part influenced the other bondholders in their bidding or not bidding at the sale, we cannot say, but it is obvious that the action of the latter might have been different if they had not been led to suppose that the fund to be realized at the sale, if not sufficient to pay the bondholders in full, would be apportioned pro rata amongst them. They had a right to assume that it would be so distributed because it had been so decreed in the suit to which these appellees were parties and in which they had full opportunity to be heard. To ignore that decree in the distribution or to amend it so as to include as distributees the appellees in their right as scrip holders, without being able to put the bondholders in the position they would have occupied, if before the decree and sale the former had availed themselves of their right to convert their scrip into a bond, would be inequitable. At the time they made their demand the appellees had no right to have a bond issued to them which would be secured upon the property originally covered by the mortgage or upon the fund arising from its sale. Hence the maxim that equity regards that as done which ought to have been done has no application.

The decree of February 14, 1902, is reversed at the cost of the appellees; and it is now ordered, adjudged and decreed that the fund retained by the plaintiff as trustee pursuant to the decree of September 26, 1901, be distributed by the plaintiff to and among the holders of the 1,230 bonds referred to in the original decree of foreclosure pro rata, so that no preference, priority or distinction shall be given to any of said bonds.